## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**JEFFREY CLAUDE STEPHENS,** :

          **Petitioner,** : **CIVIL ACTION NO. 1:08-1029**

    **v.** : **(KANE, C.J.)**
                                 **(MANNION, M.J.)**

**SUPERINTENDENT MICHAEL** :
**KLOPOTOSKY and**
**PA ATTORNEY GENERAL,** :

          **Respondents.** :

## REPORT AND RECOMMENDATION[1]

On May 27, 2008, the petitioner, Jeffrey Claude Stephens, an inmate at the State Correctional Institution at Dallas, Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. No. 1). For the reasons set forth below, the court will recommend that the petition be **DENIED**.

## I. BACKGROUND

On the evening of July 13, 1996, Kirsten Lameo went out to some local bars including Laboranti's Bar in Dunmore, Pennsylvania. (Doc. No. 10 at 14).

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

While at Laboranti's Bar, Lameo met her friend Carol Wilmot, as well as the petitioner, who was playing pool. *Id.* At the end of the night, Lameo offered to give Stephens a ride home. *Id.*

According to Lameo, the petitioner directed her to a secluded spot where he forcibly engaged in sexual intercourse with her. *Id.* On the other hand, the petitioner maintains that, Lameo chose the place to park, and when they reached that spot, she consented to engage in sexual intercourse with him. *Id.*

After this incident, Lameo proceeded to a friend's home, and was then taken to the hospital where a rape kit was administered and the Dunmore Police were contacted. *Id.*

On July 16, 1996, the petitioner was charged with rape, involuntary deviate sexual intercourse, sexual assault, indecent assault, simple assault, and aggravated indecent assault. *Id.* at 12. On November 20, 1996, following a jury trial, Stephens was convicted of all of the charges with the exception of the rape charge. (Doc. No. 1 at 13).

On January 16, 1997, following a hearing, petitioner was classified as a sexually violent predator and was sentenced to an aggregate term of ninety-eight months to life imprisonment. *Id.* at 25-26. The petitioner filed a timely

2

notice of appeal to the Superior Court of Pennsylvania, but on June 16, 1997, the appeal was dismissed as petitioner failed to file a brief. (Doc. No. 1 at 13, 26).

On December 18, 1997, the petitioner, proceeding *pro se*, filed a petition under Pennsylvania's Post-Conviction Relief Act ("PCRA"). *Id.* at 26. The PCRA court appointed counsel, who filed an amended petition, on petitioner's behalf. *Id.* The PCRA court granted the petition, and on September 17, 1999, the court vacated his sentence and reinstated petitioner's direct appeal rights. *Id.*

On November 23, 1999, the petitioner received a sentence of ninety-eight months to twenty-six years of imprisonment. *Id.* After receiving this sentence, petitioner filed a timely post-sentence motion. *Id.* The trial court denied that motion. *Id.*

The petitioner then filed a direct appeal to the Superior Court, and on June 27, 2001, his appeal was denied. *Id.* Petitioner then filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which the court denied on March 20, 2002. *Id.* Petitioner did not file a petition for a writ of *certiorari* with the United States Supreme Court. *Id.*

Beginning on January 3, 2003, petitioner, proceeding *pro se*, filed the

first of numerous PCRA petitions. (Doc. No. 1 at 26). The first was entitled "Plain English Motion for a New Trial on the Ground of After-Discovered Evidence." *Id.* On February 14, 2003, petitioner filed a "Petition to File an Amended Petition for [PCRA] Relief," and on March 19, 2003, petitioner filed an "Amended PCRA Petition." *Id.* at 26-27. On April 1, 2003, petitioner filed yet another PCRA petition. Following the April 1, 2003 petition, counsel was appointed to assist the petitioner with the prosecution of his case. *Id.* at 27. After the appointment of counsel, petitioner filed a *pro se* motion for waiver of counsel, and a memoranda of law in support of his "Amended PCRA Petition." *Id.* The PCRA court failed to address his request to remove appointed PCRA counsel and, thus, petitioner appealed to the Superior Court of Pennsylvania. *Id.* However, the Superior Court quashed petitioner's appeal because no appealable order had been entered by the PCRA court. *Id.*

Following the Superior Court's order, the PCRA court conducted a hearing on the petitioner's PCRA petition where petitioner was represented by counsel. (Doc. No. 1 at 27). On April 26, 2006, at the hearing, the court permitted the petitioner, via PCRA counsel, to orally amend his PCRA petition. *Id.* at 16. The PCRA court then issued an opinion on October 2, 2006 denying petitioner's PCRA petition. *Id.* at 27. In turn, the petitioner requested,

but was not granted, the ability to proceed *pro se. Id.*

Petitioner then appealed to the Superior Court of Pennsylvania. During the pendency of his appeal, he filed a *pro se* brief claiming appointed PCRA counsel was ineffective. (Doc. No. 1 at 28). Accordingly, the Superior Court directed appointed counsel to file a petition for remand so that the lower court could address the petitioner's allegations. *Id.* The petitioner, proceeding *pro se*, also filed with the Superior Court a motion for withdrawal of appointed counsel and, a petition for permission to proceed *pro se*. *Id.* Appointed counsel then filed the petition for remand, but the petition failed to address and analyze all of the petitioner's allegations regarding appointed counsel's ineffectiveness. *Id.* Thus, the petitioner's *pro se* brief contained other ineffective assistance of counsel claims which the Superior Court was precluded from reviewing at that time. *Id.* Due to the Superior Court's concerns regarding this case, the court denied petitioner's motion and petition, and remanded the case back to the lower court. *Id.* On remand, the lower court conducted a *Grazier*[2] hearing, and the court concluded that petitioner was knowingly waiving his right to counsel, and therefore, petitioner

---

[2] Commonwealth v. Grazier, 552 Pa.9, 713 A.2d 81 (Pa. 1998)

was permitted to proceed *pro se* on appeal. *Id.* at 28-29. Accordingly, petitioner filed a supplemental brief with the Superior Court. *Id.* at 29. On February 19, 2008, the Superior Court affirmed the PCRA court's denial of the PCRA petition. *Id.* at 25.

On May 27, 2008, the petitioner, filed the instant petition for writ of habeas corpus which contains six grounds for relief. (Doc. No. 1). The court will briefly summarize each of these grounds for relief below.

<u>Ground 1</u>

Following petitioner's arrest, he phoned Linda Voytko who was his, then, girlfriend. During this initial phone conversation, petitioner told her that he had been arrested for rape, but that he did not commit the rape. Consequently, Voytko stated she would call her attorney Salvatore Nardozzi, Jr., and see if Nardozzi could assist the petitioner.

After Voytko contacted Nardozzi, Voytko spoke with the petitioner a second time. During this conversation, Voytko told the petitioner that Nardozzi would help, but that he needed to know if sex had occurred with Kristen Lameo. At that point, the petitioner admitted that sex had occurred, but that it was not rape.

Petitioner complains that no investigation has ever been conducted into

the activities of Nardozzi and Voytko on the night of July 16, 1996, regarding Voytko's phone call with petitioner and the elicitation of petitioner's admission. Moreover, petitioner contends that this admission was used by the Commonwealth throughout petitioner's trial to show that he had lied to Voytko by changing his story, and, as such, he was a liar and unworthy of belief.

Consequently, petitioner claims that (1) trial counsel was ineffective in failing to have his admission to Voytko suppressed; and (2) appellate counsel was ineffective in failing to raise the issue of trial counsel's ineffectiveness under various Sixth Amendment theories.

Ground 2

Petitioner claims that the Commonwealth failed to provide the defense in discovery with certain information. Specifically, petitioner states that the Commonwealth did not reveal that Voytko was in contact with the prosecuting attorney, Assistant District Attorney Talerico, within two weeks of petitioner's arrest. This contact between Voytko and Talerico was initiated via phone call, but the content of the phone call and the fact that it had occurred were not given as discovery. Moreover, petitioner states that he wrote Voytko a letter while he was incarcerated at the Lackawanna County Prison awaiting trial, and that Voytko was in possession of this letter while in contact with Talerico,

but this information was not disclosed in discovery. Furthermore, the fact that Voytko was going to be a material witness, and the fact that the letters petitioner wrote to Voytko were going to be used against him, were not disclosed until three days before trial. Consequently, petitioner states that he was emotionally unprepared to endure Voytko's testimony. Finally, petitioner states that the Commonwealth failed to disclose the fact that Voytko was going to lie on the stand by stating that petitioner had been arrested once before while she was dating him. Petitioner maintains that all of this discoverable evidence could have been used to impeach Voytko's testimony.

Petitioner claims that trial counsel was ineffective in failing to ascertain these discovery violations, and that appellate counsel was ineffective in failing to raise both the Commonwealth's and trial counsel's violations.

### Ground 3

On November 15, 1996, three days before the trial was to start, trial counsel informed petitioner that the Commonwealth had offered a plea bargain to an open-ended 20 months, if petitioner pled guilty to aggravated indecent assault. On November 18, 1996, the first day of the trial, petitioner allegedly questioned trial counsel about the plea deal. Specifically, petitioner allegedly asked (1) what the maximum sentence was, (2) what his chances

of acquittal were at trial, (3) whether or not Megan's law would be applied, and (4) what his sentence would be if he was found guilty after trial. Petitioner maintains that trial counsel never answered any of these questions. Additionally, petitioner states that if he had been informed that he was facing up to life imprisonment; that his chances at trial were slim, especially since his girlfriend had decided to testify against him; that Megan's law would be applied regardless of whether he pled guilty or was found guilty after trial; and that pursuant to the plea agreement the maximum sentence that could be imposed  would not be more than 10 years and possibly as low as four years; petitioner would have accepted the Commonwealth's offer.

Petitioner claims that trial counsel was ineffective in failing to answer his questions, and appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness.

Ground 4

At trial, counsel objected to the admission of Commonwealth Exhibits 19-22, the letters petitioner wrote to Voytko while awaiting trial. These objections were overruled, however the court did limit that the exhibits could *only* be used for impeachment evidence if petitioner lied about their contents or existence. Despite this ruling as to the limited use of these exhibits, after

the verdict had been rendered, trial counsel ascertained that the letters had gone back to the jury room and had been considered by the jury during their deliberations.

Accordingly, trial counsel filed a motion for a new trial and for arrest of judgment. This motion was denied as improvidently filed because it was filed post-<u>verdict</u>, and not post-<u>sentence</u>. Trial counsel failed to re-file the motion post-sentence.

Appellate counsel raised this issue on direct appeal as an ineffective assistance of counsel claim. The claim was denied by the Superior Court without reaching the prejudice of the letters. As such, petitioner contends that this issue should have been raised as a separate due process violation. Consequently, petitioner claims that trial counsel was ineffective in failing to timely re-file the motion post-sentence, and that appellate counsel was ineffective in failing to raise trial counsel's omission and to raise the issue as a separate due process claim.

<u>Ground 5</u>

The admission in Ground 1 to Voytko, namely that sex had occurred, was used by the prosecution to show that petitioner had lied to Voytko, and, therefore, he must also be lying to the jury. During closing argument Assistant

District Attorney Shwed continuously employed the terms "liar" and "lied" when referring to the petitioner. Shwed also implored the jury to use their common sense to arrive at the conclusion that the victim's blood was, in fact, on petitioner's clothing, despite the fact that a serologist's blood tests apparently only indicated the possibility of blood. In addition, petitioner claims that Assistant District Attorney Shwed also misstated the dates of the Commonwealth's exhibits 19-22. Therefore, petitioner claims that this alleged prosecutorial misconduct during closing argument violated due process and trial counsel's failure to object was ineffective assistance of counsel.

Ground 6

Petitioner's final ground for relief is "cumulative misconduct and denial of effective assistance of counsel combined to deny due process." First, petitioner asserts that the Commonwealth failed to provide:

> discovery of the way petitioner's admission was elicited; provide discovery that they had possession of petitioner's admission, in a timely manner; provide discovery that Voytko was in contact with Attorney Nardozzi - a former ADA for the Lackawanna County Da's Office - when the admission was elicited; provide discovery that when Voytko was in contact with ADA Talerico she was in possession of petitioner's first letter to her; provide discovery of the fact that there was a phone call between Voytko and ADA Talerico, as well as the context and content of said call; provide discovery of the fact that Voytko was going to be a material witness against petitioner, in a timely manner; provide discovery that Voytko had lied about prior crimes evidence

against petitioner while under oath and on the stand.

Petitioner argues that all of this evidence was valuable impeachment evidence or evidence that would have prompted trial counsel to perform adequate investigations. Second, petitioner contends that the Commonwealth improperly used the fact that petitioner had lied to his girlfriend to attack his credibility, believability and character when:

> ADA Talerico, on cross-exam[ination] equating that because petitioner lied to his girlfriend it meant that petitioner was also lying to the jury; ADA Shwed stating that petitioner looked his girlfriend in the eyes – a fact not in evidence– and lied, then because he was looking the jury in the eyes while he was testifying he was also lying to them; ADA Shwed misstating the dates of the Commonwealth Exhibits 19-21 . . . to show Voytko waited 2½ months to come to the DA's Office, when in fact by Voytko's own testimony she was in touch with ADA Talerico one or two weeks after petitioner was arrested; ADA Shwed continually stating that petitioner "lied" or was a "liar."

Third, with respect to closing argument, petitioner contends that ADA Shwed (1)  improperly implored the jury to use their common sense to arrive at a conclusion that the victim's blood was present on the petitioner's clothing even though the serologist stated there was no blood, and (2) stated that the victim told the truth, while the petitioner lied - thereby putting the weight of her office behind her statements, and improperly vouching for a Commonwealth witness.

Based on the foregoing, petitioner claims that (1) trial counsel was ineffective for not timely objecting to the above instances of misconduct, (2) appellate counsel was ineffective in failing to raise that misconduct and trial counsel's ineffectiveness on direct appeal, and (3) this ineffective assistance of trial and appellate counsel denied petitioner a fair trial and a adequate direct appeal which amounts to a denial of due process.

Following the filing of the instant petition, on July 24, 2008, respondents filed a response, (Doc. No. 8); (Doc. No. 9), and on August 12, 2008, petitioner filed a traverse (Doc. No. 13; Doc. No. 14).

On October 29, 2009, the undersigned issued a report and recommendation that recommended the instant petition be denied as untimely. (Doc. No. 18). On February 5, 2010, the district judge issued a memorandum and order that declined to adopt the report and recommendation finding that the petition was timely. (Doc. No. 20). The district judge also remanded the action back to the undersigned. *Id.*

On June 3, 2010, the undersigned issued an order directing the respondents to file with the court (1) the trial court transcript from *Commonwealth of Pennsylvania v. Jeffrey Claude Stephens*, Docket Number: CP-35-CR-0001297-1996; and (2) the PCRA briefs that petitioner Jeffrey

13

Stephens filed with the Superior Court of Pennsylvania in *Commonwealth of Pennsylvania v. Jeffrey Claude Stephens*, Docket Number: 1902 MDA 2006. (Doc. No. 21). Accordingly, the respondents complied and submitted the trial court transcript on July 8, 2010, and the PCRA briefs on August 10, 2010. (Doc. No. 22); (Doc. No. 25).

## II.   LEGAL ANALYSIS

### A. Exhaustion/Procedural Default

The district court may grant a petition only if the petitioner has exhausted all available state remedies as to each federal claim raised in the petition. 28 U.S.C. § 2254(b)(1)(A); *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Slutzker v. Johnson*, 393 F.3d 373, 379 (3d Cir. 2004). The principle of exhaustion, which is founded on comity, requires a petitioner "to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . by invoking one complete round of the State's established appellate review process."[3]

---

[3] The court notes that pursuant to Order No. 218 issued by the Pennsylvania Supreme Court, federal habeas petitioners do not have to appeal to the Pennsylvania Supreme Court to satisfy the exhaustion requirement. *Johnson v. Mechling*, 541 F. Supp. 2d 651, 655 n.7 (M.D. Pa. 2008). The Third Circuit has recognized the validity of this order, and

*O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *Slutzker*, 393 F.3d at 380 (citing *Doctor v. Walters*, 96 F.3d 675, 681 (3d Cir. 1996)).  Moreover, the exhaustion doctrine does not require prisoners to file repetitive petitions. *Siluk v. Tennis*, No. 07-0605, 2009 U.S. Dist. LEXIS 75101, at *4 (M.D. Pa. Aug. 24, 2009) (citing *O'Sullivan*, 526 U.S. at 844). Therefore, the exhaustion doctrine does not require prisoners to raise the same issues when petitioning for collateral relief that have already been decided by direct review. *Id.* The petitioner bears the burden of establishing that all available state remedies have been exhausted. *Parker v. Kelchner*, 429 F.3d 58, 62 (3d Cir. 2005).

The exhaustion requirement is excused if it would be futile because "there is an absence of available State corrective process," such as where an appeal or petition for review would be procedurally barred as untimely, or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(I), (ii); *Slutzker*, 393 F.3d at 380 (citing *Doctor*, 96 F.3d at 681). However, if exhaustion is futile because the petitioner failed to satisfy a state procedural requirement, then the petitioner has procedurally defaulted and the exhaustion requirement is not excused.

---

therefore a federal petitioner under custody pursuant to the judgment of a Pennsylvania court need only appeal to the Pennsylvania Superior Court to exhaust available state remedies. *Id.*

*Coleman*, 501 U.S. at 729-30; *Slutzker*, 393 F.3d at 380-81. Procedural default, like exhaustion, is founded on comity and federalism. A federal court may not entertain a petition for habeas corpus where the petitioner has procedurally defaulted because the procedural default "rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 729-30, 750; *Slutzker*, 393 F.3d at 380-81.

Procedural default is excusable only if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[4] *Coleman, 501 U.S. at 749-50*; *Slutzker, 393 F.3d at 380-81*. To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules." *Murray v. Carrier, 477 U.S. 478, 488 (1986)*. Examples of "cause" include where interference by government officials made compliance impracticable or ineffective assistance of counsel. *Id.* But a claim of ineffective assistance of counsel must generally be

---

[4] The miscarriage of justice exception is available only in "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray, 477 U.S. at 496*. Because the petitioner does not raise "actual innocence" as a ground for relief, this exception does not apply.

16

presented to the state courts as an *independent* claim before it may be used to establish "cause" for procedural default. *Id.* at 488-89 (citing *Rose v. Lundy,* 455 U.S. 509, 518 (1982))(emphasis added); *Werts v. Vaughn,* 228 F.3d 178, 192-93 (3d Cir. 2000). "Actual prejudice" requires a petitioner to establish that an error caused him "actual and substantial disadvantage." *Murray,* 477 U.S. at 494 (citing *United States v. Frady,* 456 U.S. 152, 170 (1982)).

With respect to grounds 2, 3 and 6, the court finds that petitioner has failed to demonstrate that these claims were exhausted. As these claims were not raised on direct appeal, the only way for these claim to have been exhausted is if they were raised in the PCRA proceedings. A review of the decision by the Court of Common Pleas indicates that PCRA counsel assisted the petitioner to orally amend his PCRA petition at the April 26, 2006 hearing. Specifically, the petitioner narrowed the issues to:

1.  "[W]hether appellate counsel was ineffective for failing to allege that trial counsel was ineffective for failing to ascertain evidence of an agency relationship between Linda Voytko and the district attorney's office"; and

2.  "[W]hether appellate counsel was ineffective for failing to brief and argue that the prejudicial effect of the submission of the letters to the jury deprived the defendant of a fair trial."

(Doc. No. 1 at 17). Thus, the petitioner failed to raise the claims in grounds

2, 3 and 6[5] to the Court of Common Pleas. Because the petitioner did not raise these claims to the PCRA court, the Court of Common Pleas, his claims are unexhausted.

With respect to ground 4, petitioner claims that trial counsel was ineffective in failing to re-file the improvidently filed post-verdict motion regarding the letters going back with the jury, and that appellate counsel was ineffective in failing to raise trial counsel's omission and to raise the issue as a separate due process claim. To the extent petitioner claims that appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness for failing to revisit or re-file the improvidently filed post-verdict motion, this claim was not raised to the PCRA court, and as such this claim was not properly exhausted. *See Landano v. Rafferty*, 897 F.2d 661, 671 n.13 (3d Cir. 1996) (noting that the prevailing view in the circuits is that claims of ineffectiveness of counsel or unfair trial, which "encompass an almost limitless range of possible errors," should not be considered exhausted if the prisoner bases the claim on different factual predicates in federal court than he or she did in state

---

[5] The court notes that even if ground 6, petitioner's cumulative error claim,  was exhausted, the court still could not recommend that habeas relief be granted, as the underlying claims for the "cumulative error" are either unexhausted or meritless.

court (quoting *Lanigan v. Maloney*, 853 F.2d 40, 45 (1st Cir. 1988))).

With respect to ground 5, petitioner claims that the prosecutor engaged in prosecutorial misconduct during closing argument, and that trial counsel was ineffective in failing to object to the prosecutorial misconduct. Specifically, petitioner takes issue with the fact that (1) the prosecutor called him a liar, (2) the prosecutor asked the jury to use their common sense and find that there was blood on his clothing, and (3) the prosecutor misstated and/or misrepresented when Voytko went to the district attorney's office. On direct appeal, the petitioner failed to raise the issue regarding the alleged misstatements or misrepresentations of evidence by the prosecutor during closing argument. Accordingly, the court finds that petitioner's claims regarding the misstated or misrepresented evidence are unexhausted. *See Wright v. Vaughn*, 473 F.3d 85, 92 (3d Cir. 2006) (explaining that each factual predicate giving rise to a prosecutorial misconduct due process claim must be raised at each level of review before the state courts or else the claim is unexhausted).

Because the petitioner can no longer timely submit the unexhausted claims raised in Grounds 2, 3, 4, 5 and 6 to the state courts, *see* 42 Pa. Cons. Stat. Ann. §9545 (statute of limitations on filing PCRA petition), exhaustion of

19

the claims is futile, and the petitioner has procedurally defaulted on them. Furthermore, the court finds no ground to excuse the petitioner's procedural default. Specifically, the petitioner has failed to allege any external factor that impeded him from filing these claims in a procedurally proper manner. Moreover, the court notes that ineffective assistance of PCRA counsel does not establish cause because petitioner did not have a constitutional right to representation at his PCRA hearing. *See Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002) (Because Cristin had no Sixth Amendment right to representation at his PCRA hearing, his counsel's alleged ineffective assistance cannot establish cause for Cristin's procedural default.) (citations omitted). Therefore, the court recommends that petitioner's unexhausted and procedurally defaulted claims for relief in grounds 2, 3, 4, 5 and 6 be dismissed.

### B.   Exhausted Claims

A district court is authorized to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §2254. A petition for writ of habeas corpus is the exclusive federal remedy for a state

prisoner challenging the 'very fact or duration' of his confinement and seeking 'immediate release or a speedier release from that imprisonment.'" *Preiser v. Rodriguez*, 411 U.S. 475, 498-500 (1973).

In evaluating the merits of a state prisoner's habeas petition that has been presented to a state court and adjudicated on the merits, the district court must generally defer to the decisions of the state courts. A district court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in a State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (discussing standard); *Harrington v. Gillis*, 456 F.3d 118, 124 (3d Cir. 2006) (same). A decision by a state court is "contrary to . . . clearly established federal law" "if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *Harrington*, 456 F.3d at 124; *see Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 887-88 (3d Cir. 1999) (*en banc*). A decision by a

state court unreasonably applies federal law if "the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *Harrington*, 456 F.3d at 124.

The application of §2254(d) entails two steps. First, the court must determine whether "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." *Matteo*, 171 F.3d at 888 (quoting *O'Brien v. Dubois*, 145 F.3d 16, 24-25 (1st Cir. 1998), *overruled in part on other grounds by McCambridge v. Hall*, 303 F.3d 24 (1st Cir. 2002)). Then, if the court determines that the state court's decision was not "contrary to" federal law, "either because the state court decision complies with the Supreme Court rule governing the claim, or because no such rule has been established," the court must determine whether the state court's application of federal law was an "unreasonable application" of the Supreme Court rule. *Id.* at 889. Unreasonableness is an objective determination; a state court decision is unreasonable if, "evaluated objectively and on the merits, [it] resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* at 889-90; *see Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

22

*Standard of Review for Ineffective Assistance of Counsel Claims*

The Constitution guarantees criminal defendants the effective assistance of counsel, U.S. CONST. amend. VI, which is measured by "reasonableness under prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish a violation of that right, a petitioner must make two showings. First, he "must show that counsel's performance was deficient." *Id.* Counsel is deficient if, "on the facts of the particular case, viewed as of the time of counsel's conduct," his conduct was unreasonable. *Id.* at 690. There is a strong presumption that counsel is effective. *Id.*; *see id.* at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). Second, he must affirmatively show that the deficient performance "prejudiced the defense." *Id.* at 687, 693. Prejudice means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694-95. In assessing prejudice, the court must consider the totality of the evidence that

was before the factfinder. *Id.* at 695.

The court notes that the state court relied on state law in deciding petitioner's ineffective assistance of counsel claims. However, Pennsylvania state law is not contrary to *Strickland. See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000) (Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to *Strickland*.). Thus, under §2254(d)(1), the relevant question here is whether the Superior Court's decision involved an unreasonable application of *Strickland. See Richter v. Harrison*, 131 S. Ct. 781, 785 (2011) (The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.).

## Ground 1

Petitioner claims that trial counsel was ineffective because he failed to have his admission to Voytko suppressed under various Sixth Amendment theories. Petitioner further claims that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness. In addition, petitioner appears to complain that no investigation into his agency theory for suppression of the admission was conducted.

The petitioner first raised his ineffective assistance of trial counsel claim

for failure to suppress Voytko's testimony, and his admission, on direct appeal. A review of petitioner's direct appeal briefs indicates that the issue was raised, and, accordingly, the issue was addressed by the Superior Court. Specifically, the Superior Court stated that:

> Voytko testified that on the day in question, she had been out with some friends and did not return home until 2:00 or 2:30 a.m. Appellant arrived home at approximately 3:15 a.m. Appellant informed Voytko that he had been out and had eaten wings and pizza and had spilled some sauce on his clothes. Appellant indicated that he had been at a bar in Scranton and was dropped off at a bar by another woman. According to Voytko, appellant claimed he did not know the woman and claimed he did not have sex with her. It was not until after his arrest that appellant admitted to Voytko he had engaged in consensual sex with the victim. *Appellant argues that trial counsel was ineffective for not objecting to or moving to exclude the above testimony of Voytko.*

(Doc. No. 10 at 86). On February 2, 2001, the court held an evidentiary hearing where petitioner's trial counsel testified. *Id.* Trial counsel testified that he believed Voytko's testimony did not damage his case because petitioner never denied having sex with the victim, but instead claimed that the sex was consensual. *Id.* at 86-87. Trial counsel explained that upon returning home that night, petitioner would not have admitted to his girlfriend that he had sex with another woman. *Id.* at 87. Trial counsel further testified that because Voytko had gone to the district attorney's office on her own, she gave the

appearance of a scorned girlfriend. *Id.* The Superior Court noted that Voytko's cross-examination revealed she was upset when she learned that petitioner had sex with the victim. *Id.* Specifically, the court cited to the following testimony:

> [TRIAL COUNSEL:]   And then it upset you to such a degree that you - - the DA's office didn't come to you, right?
>
> [LINDA VOYTKO:]   Correct.
>
> Q.   You went to the DA's Office, right?
>
> A.   Yes.
>
> Q.   You went to the DA's Office with letters from Jeff?
>
> A.   Yes.
>
> Q.   You went to the DA's office with those clothes; isn't that true?
>
> A.   Yes.
>
> Q.   You did that of your own free will?
>
> A.   Yes.
>
> Q.   The DA never came to you?
>
> A.   Right.

*Id.* at 87-88. Since appellant was acquitted of the rape charge, the Superior Court found that the jury believed the sex was consensual. *Id.* at 88. Therefore, the court found that counsel's strategy was reasonable. *Id.* Accordingly, the Superior Court found that trial counsel was not ineffective for failing to object or exclude Voytko's testimony regarding petitioner's

admission.

The petitioner subsequently filed a PCRA petition. In petitioner's PCRA petition, he raised two issues. (Doc. No. 1 at 17). Of relevance here, petitioner raised the issue of whether appellate counsel was ineffective for failing to allege that trial counsel was ineffective for failing to ascertain evidence of an agency relationship between Linda Voytko and the district attorney's office. *Id.* In addition, petitioner argued that no objection was ever made to the admission of Voytko's testimony as being a violation of his Sixth Amendment right to counsel. *Id.* at 18-19. The PCRA court summarized petitioner's claim as follows:

> As to the agency claim, Defendant testified that after his arrest he contacted his "girlfriend," Voytko. Voytko said she would call Attorney Sal Nardozzi, her lawyer, to see if he could help Defendant. The testimony established that Attorney Nardozzi was previously employed by the Lackawanna County District Attorney from 1989 to July 1991. Voytko allegedly called the Defendant again and said Attorney Nardozzi could help him, but he first needed to know if Defendant had sex with the victim. At that time, the Defendant informed Voytko that he had sex with the victim. Defendant stated that he said this in the belief that Voytko was going to obtain the services of Attorney Nardozzi for him.
>
> Defendant maintains that he never spoke with, met or directly communicated with Attorney Nardozzi. Despite this undisputed fact, Defendant based his agency claim on his belief that Attorney Nardozzi "took on the mantle of investigator for the Commonwealth by questioning" the defendant. Defendant claims that after his arrest and incarceration, he continued to

> communicate with Voytko. Defendant maintains that the communications from Voytko were being coordinated by Attorney Nardozzi, although he had not a scintilla of evidence to support his assertion.
>
> Defendant further claims that in Voytko's trial testimony she stated that she was in contact with the District Attorney's office a week or two after the Defendant's arrest. Defendant maintains if he knew she were in contact with the District Attorney at that time and he knew she was to be a material witness, he would not have had contact with her and she would not be able to contact him. He suggests her actions should be deemed agency to ascertain evidence. Defendant claims there was no objection made to the admission of this evidence as being in violation of his 6th Amendment right to counsel. As a result, he claims his Trial Counsel was ineffective. Defendant claims this ineffectiveness by Trial Counsel was never raised on appeal.

*Id*. The Court of Common Pleas found that there was no support, whatsoever, for petitioner's argument that Attorney Sal Nardozzi was somehow working with or for the District Attorney's office. *Id.* at 20-21. Because the court found that petitioner's underlying agency claim was meritless, the court found that appellate counsel was not ineffective. *Id.*

Petitioner then filed an appeal to the Superior Court. A review of petitioner's brief indicates that he raised the following issue:

> "Was PCRA counsel ineffective in failing to amend Stephen's PCRA petition and participate meaningfully in Stephens' PCRA hearing and raise appellate counsel's failure to raise and litigate on direct appeal the failure of trial counsel to move for suppression by objection or motion the testimony of Linda Voytko

28

which improperly attacked Stephens' credibility and character for truthfulness and that such failure denied due process of law?"

(Doc. No. 25 at 10). Petitioner argued that counsel should have sought suppression of Voytko's testimony based on Voytko being an agent of the prosecution, attorney-client relationship, governmental intrusion into the attorney-client relationship, and a violation of Pa.R.E. 608(b)(1). (Doc. No. 25 at 14).

Upon considering petitioner's claim, the Superior Court held that they found no merit in petitioner's assertion that PCRA counsel was ineffective. (Doc. No. 1 at 29-30). In addition, with respect to the underlying issue of trial and direct appeal counsel's performance *vis-à-vis* Voytko's testimony, the court explained that these issues were raised on direct appeal and were ruled upon by the court at that juncture. *Id.* at 30. Therefore, the court held that

> the issues are "previously litigated" and cannot be raised anew at the present stage. *See* 42 Pa.C.S.A. §9544(a). Contrary to Appellant's assertions, it is of no moment that Appellant now attempts to couch these allegations under new theories of relief or present additional, alternative arguments to those presented by counsel on direct appeal in order to sidestep the bar against review of issues litigated previously. *See Commonwealth v. Murray*, 836 A.2d 956, 960 (Pa. Super. 2003). Consequently, Appellant's remaining assertions are entirely without merit and, therefore, fail.

*Id.* at 30-31.

Because the Superior Court deemed petitioner's claims "previously litigated," the court must determine if we may address petitioner's present ineffective assistance of counsel claims on the merits. In *Cheslak v. Piazza*, No.05-2136, 2008 U.S. Dist. LEXIS 7999, at *16, (M.D. Pa. Jan. 31, 2008), the court explained that "other courts in the Third Circuit have adopted the rationale that the PCRA's 'previously litigated' rule is a not a state 'procedural requirement within the meaning of *Coleman*' such that a habeas petitioner's claims would be deemed procedurally defaulted and would not be reviewed on the merits." *Id.* (collecting cases). Moreover, the court explained:

> the rationale for finding that the "previously litigated" rule is not a state procedural requirement that would bar habeas review is set forth as follows:
>
> > A finding that a PCRA claim is "previously litigated" carries no implication of procedural error on the petitioner's part. It solely indicates that the petitioner had previously raised the claim, and lost. Therefore, unlike genuine procedural requirements, such as statutes of limitations or rules governing waiver, the "previously litigated" rule is not one that a petitioner can somehow obey in order to obtain PCRA review of his claim.
>
> *Williams v. Brooks*, 435 F. Supp. 2d 410, 421 (E.D. Pa. 2006) (citations omitted).
>
> Accordingly, a "previously litigated" finding by a PCRA court is essentially an affirmance of the underlying state court ruling,

and will be treated as such on federal habeas review. *See Alford v. Johnson*, No. 00-683, 2006 U.S. Dist. LEXIS 8073, at *16 (E.D. Pa. Mar. 1, 2006). This treatment is consistent with the purpose of the procedural default doctrine to assure that the highest court of a state has the opportunity to address the federal claim in the first instance. *See id.* (citing *Sistrunk v. Vaughn*, 96 F.3d 666, 675 n.11 (3d Cir. 1996). Where the "previously litigated" rule has barred PCRA review, the state court had the opportunity to address the federal claim, but decided not to do so, and thus there is no concern about intruding upon the state courts. *See id.* *See also Williams*, 435 F. Supp. 2d at 421. Therefore, in the instant case, Petitioner's claims will be addressed on the merits, and the Superior Court's decision not to review his ineffective assistance of counsel claims in the PCRA proceedings will be treated as an affirmance of its prior decision on direct appeal.

*Cheslak*, 2008 U.S. Dist. LEXIS 7999, at *16-17. This court agrees with the

analysis employed by the court in *Cheslak,* and finds that petitioner's

ineffective assistance of counsel claims should be addressed on the merits.[6]/[7]

---

[6] The court notes that respondents have argued that to the extent any assertions in ground 1 were not presented to and ruled upon by the Superior Court, such assertions were not fairly presented to the state court. First, petitioner's claims in ground 1 were raised on direct appeal and during the state court collateral proceedings. Second, all of petitioner's claims in ground 1 were ruled upon by the Superior Court. Specifically, with respect to petitioner's additional theories for objecting to or suppressing Voytko's testimony that were raised during the PCRA proceedings, the Superior Court explained that the underlying issue was previously litigated, and, therefore, the Superior Court affirmed its prior decision. Thus, petitioner's claims should be addressed on the merits as they were exhausted, and are not procedurally defaulted. *See Boyd v. Warden*, 579 F.3d 330, 368-71 (3d Cir. 2009).

[7] As summarized above, on direct appeal, the Superior Court held that petitioner's ineffective assistance counsel claim lacked merit as counsel acted

Consequently, the relevant issue is whether the state court's determination was "contrary to" clearly established federal law, or reflected an unreasonable application of that law. 28 U.S.C. §2254(d). *Id.* As the court stated above, Pennsylvania's standard for ineffective assistance of counsel is not contrary to clearly established federal law. Thus, the court must determine if the Superior Court's decision constitutes an unreasonable application of *Strickland*.

Here, petitioner claims that trial counsel was ineffective in failing to have his admission, through Voytko's testimony, suppressed at trial under any type of Sixth Amendment theory. Petitioner further contends that appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness.

Upon review, the court finds that the Superior Court's decision on direct appeal that trial counsel was not ineffective for not objecting to or seeking to suppress petitioner's admission to Voytko that sex was present was reasonable. A review of the Superior Court's decision reveals that, at an

reasonably. To the extent petitioner later attempted to add additional theories for why counsel was ineffective for failing to suppress the testimony, the Superior Court explained that the issue was previously litigated and these new theories were meritless. Accordingly, this court will treat the Superior Court's latter decision as affirming its prior decision on direct appeal with respect to petitioner's new theories for objecting to or suppression of the testimony.

32

evidentiary hearing, trial counsel explained that he did not seek to suppress Voytko's testimony regarding the admission that sex was present because it was consistent with petitioner's story of what happened on the night in question. Specifically, petitioner did not deny that sex was present with the victim. Instead, petitioner argued that it was consensual. In addition, trial counsel explained that Voytko gave the appearance of a scorned girlfriend. Moreover, the Superior Court found that this strategy by trial counsel was effective as petitioner was acquitted of the rape charge. In addition, Voytko's testimony revealed that she was upset and went to the District Attorney's office on her own. Because the strategy proved successful, the Superior Court found trial counsel acted reasonably. As such, the Superior Court found that trial counsel was not ineffective. Moreover, as trial counsel acted reasonably by not objecting to or seeking suppression of Voytko's testimony regarding the admission, appellate counsel could not have been ineffective for failing to raise trial counsel's ineffectiveness.

In sum, the Superior Court's determination that trial counsel acted reasonably in not objecting to or seeking to suppress Voytko's testimony regarding petitioner's admission was reasonable as trial counsel's strategy proved successful. Thus, as trial counsel was effective, appellate counsel

33

could not have been ineffective in failing to raise claims as to trial counsel's ineffectiveness. *See* [Hubbard v. Jeffes, 653 F.2d 99, 104 (3d Cir. 1981)](#).

Based on the foregoing, the court cannot find that the Superior Court's decision was an unreasonable application of *Strickland*.

### **Ground 4**

In ground 4, petitioner claims that, although appellate counsel raised the issue of the exhibits going back with the jury as an ineffective assistance of counsel claim, appellate counsel was ineffective in failing to raise the issue as a separate due process claim.

Petitioner raised this claim in his PCRA petition. Specifically, the PCRA court identified the issue as "whether appellate counsel was ineffective for failing to brief and argue that the prejudicial effect of the submission of the letters to the jury deprived the defendant of a fair trial." (Doc. No. [1](#) at 17). During the PCRA hearing, appellate counsel testified that on direct appeal he argued that the submission of the letters to the jury deprived the defendant of a fair trial. *Id.* at 21.

> [Appellate counsel] testified that he surmised that the letters should never have gone out. However, he also testified that he determined it was noone's fault, but because it happened the Defendant was denied a fair trial. Appellate Counsel Robert

Buttner, Esquire maintains that he made this very argument in his supplemental brief to the Superior Court. He went back and forth on exactly how the issue should be raised.

> "It wasn't that it was - it wasn't that I wanted to attack myself, when I was doing the original brief or the supplemental brief back for the raise this as ineffective and then try to raise the due process claim, but I couldn't find a clear commonwealth [sic] of Pennsylvania case that said - that addressed something like this, where somebody was just strictly without blaming either the trial court, the prosecutor or trial counsel. And that's kind of why I think I did not pursue it at that point."

In fact, Appellate Counsel later testified that he was not saying that he did not raise the issue or even that the Superior Court failed to "entertain that issue." Appellate Counsel believes that the Superior Court missed the issue when it was raised. Since the third prong of the supplemental brief specifically states that Defendant was denied a fair trial because of the letters, Appellate Counsel believes that perhaps he should have raised it as a bullet so it would be more prominent. He believes this now in hindsight because, as he testified, he believes the Superior Court missed the issue.

(Doc. No. 1 at 21-22).

Upon considering the testimony of appellate counsel, and reviewing the petitioner's supplemental brief, the PCRA court found that the issue of due process was raised in a supplemental brief by Appellate Counsel. *Id.* at 22. Moreover, the PCRA court stated:

> " . . . the problem that Appellate Counsel had was how to raise the
> issue. As previously indicated, he testified that he could not
> determine if it should be addressed as a separate issue or a
> separate "bullet," his testimony makes clear that he never
> doubted it was an issue, rather how it should be raised. He
> believed he should have highlighted the issue more since the
> issue was missed by the Superior Court."

*Id.* at 22-23. Since the PCRA court found the due process issue was raised

by appellate counsel to the Superior Court, the PCRA court held that "there

is no arguable merit to the claim that Appellate Counsel was ineffective for

failing to raise the issue." (Doc. No. 1 at 23).

Furthermore, the PCRA court also noted that even if it was argued that

appellate counsel should have better highlighted the issue, there was a

reasonable basis for the manner in which Appellate Counsel raised the issue.

*Id.* Appellate Counsel testified that he could not find supporting case law for

his theory on the inadvertent submission of the letters to the jury. *Id.* However,

he still believed that it was an issue that needed to be raised, and, as such,

he raised it in the manner he thought appropriate after careful consideration -

and his only regret was not raising it more forcefully. *Id.*

Thus, the PCRA court held that

> "It is the opinion of the Court that the issue was properly
> raised and denied by the Superior Court. Since it was raised,

Defendant's claim of ineffectiveness for failure to raise a due process claim regarding the letters is without merit and, even if it did not, Appellate Counsel had a reasonable basis for his actions. Defendant's Petition is DENIED as a result."

*Id.*

Following the denial of PCRA relief, petitioner appealed to the Superior Court. A review of the petitioner's brief on appeal to the Superior Court indicates that he raised the issue again. (Doc. No. 25-2 at 61). However, the Superior Court failed to address this issue.[8]

Accordingly, the court finds that the PCRA court's decision constitutes an adjudication on the merits of petitioner's claim, and that the PCRA court's decision is entitled to deference. In *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009), the Third Circuit explained:

We reiterate today our approval of the Second Circuit's interpretation of "adjudicated on the merits." For the purposes of Section 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when a state court has made a decision that 1) finally resolves the claim, and 2) resolves the claim on the basis of its substance, rather than on a procedural, or other, ground. *See Rompilla*, 355 F.3d at 247 (quoting *Sellan*, 261 F.3d

---

[8] The court notes that respondents contend petitioner never raised appellate counsel's ineffectiveness in failing to raise the issue regarding the letters going back to the jury as a due process claim. This argument must be rejected because the issue was presented to the PCRA court and it was raised again on appeal to the Superior Court.

37

at 311); *see also* Lambert, 393 F.3d at 969 ("[A] state has 'adjudicated' a petitioner's constitutional claim 'on the merits' for purposes of §2254(d) when it has decided the petitioner's right to post conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits."); Sellan, 261 F.3d at 312 ("For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment.").

We agree with the Commonwealth that an "adjudication on the merits" can occur at any level of state court. Unlike other statutes that address federal review of state court decisions, the plain language of Section 2254(d) does not specify that the "adjudication on the merits" be from any particular state court. *Compare* 28 U.S.C. § 2254(d) with 28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . ." (emphasis added)). But to qualify as an "adjudication on the merits," the state court decision must finally resolve the claim. This means that the state court's resolution of the claim must have preclusive effect. *See* Rompilla, 355 F.3d at 247 (quoting *Sellan*, 261 F.3d at 311).

Thus, based on *Thomas*, the court finds that the PCRA court's decision of petitioner's ineffective assistance of appellate counsel claim constitutes an adjudication of petitioner's claim on the merits for purposes of §2254(d). Specifically, the PCRA court's decision was based upon a consideration of the merits of petitioner's claims. Moreover, this holding was not disturbed by the Superior Court, as the Superior Court failed to address petitioner's claim.

*Compare id.* (" . . . we see no 'adjudication on the merits.' Here, the Pennsylvania Supreme Court decided Thomas' claims on purely procedural, not substantive, grounds. This decision stripped the PCRA court's substantive determination of Thomas' claims of preclusive effect.). *See*, *e.g.*, *Fahy v. Horn*, 516 F.3d 169, 197 (3d Cir. 2008) (finding there was an "adjudication on the merits" in state court when the PCRA court held that counsel was not ineffective for failing to present expert psychiatric testimony).

Because the court finds that the petitioner's claim was adjudicated on the merits, the relevant issue is whether the state court's determination was "contrary to" clearly established federal law, or reflected an unreasonable application of that law. 28 U.S.C. §2254(d). *Id.* As discussed above, Pennsylvania's standard for ineffective assistance of counsel is not contrary to clearly established federal law. Thus, the court must determine if the PCRA court's decision constitutes an unreasonable application of *Strickland*.

As indicated above, the PCRA court found that petitioner's claim that appellate counsel was ineffective lacked merit because appellate counsel did raise the due process claim. The PCRA court based this decision on (1) appellate counsel's testimony which indicated he raised the issue on direct appeal to the Superior Court, and (2) the supplemental brief on appeal to the

39

Superior Court which demonstrated the issue was raised. Specifically, the

supplemental brief provided:

> Assuming arguendo that this Honorable Court is not inclined
> to place such a responsibility upon Trial Counsel, the fact of the
> matter is that the exhibits in question went to the jury when they
> were not supposed to. Regardless of who is at fault, the letters,
> which were comprised of highly prejudicial information concerning
> the Defendant and which was irrelevant to the proof of his guilt or
> innocence, went back to the jury. This in and of itself deprived the
> Defendant of a fair trial warranting that the Defendant be granted
> a new trial.
>
> With regard to the prejudicial effect which the submission of
> these letters, Commonwealth Exhibits 19-21, had on the
> Defendant's case and deprived him the fair trial, one need only
> look at the content. The relevant portions of the content are set
> forth in the Defendant's original Brief beginning on pages 22 and
> continuing through 24. The prejudicial impact and deprivation of
> fair trial is discussed in the Defendant's Brief at pages 24-26 and
> page 33.

(Doc. No. 10 at 77-78). Based on the foregoing, the court finds that the PCRA

court's finding that appellate counsel raised the issue was reasonable

because a review of the supplemental brief clearly indicates that appellate

counsel raised the due process issue. Specifically, appellate counsel argued

that the exhibits going back with the jury was so prejudicial and fundamentally

unfair that defendant was deprived of a fair trial. Accordingly, this court finds

that the PCRA court's decision that appellate counsel was not ineffective was

reasonable and supported by the record before the PCRA court.[9] *See Cullen*

---

[9] The court notes that, for the first time, petitioner argues in his traverse that the two paragraphs in his supplemental brief did not sufficiently raise the due process issue, and as such, the PCRA court was incorrect in finding the issue was raised. The court disagrees. First, even assuming that the PCRA court incorrectly decided the issue, a showing of clear error is not sufficient. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) Rather, the court must determine if the state court's determination was *objectively unreasonable*, a substantially higher threshold. *Id.* As discussed above, it was not objectively unreasonable for the court to find that the issue was raised. Second, under federal law, it was reasonable for the PCRA court to find that the issue was raised in the supplemental brief. *See Friends & Residents of St. Thomas Twp., Inc. v. St. Thomas Dev., Inc.*, 176 Fed. Appx. 219, 223 n. 9 (3d Cir. 2006).

In addition, the petitioner also contends, for the first time, that (1) the supplemental brief does not fairly present a federal due process claim, and (2) the PCRA court's alternative decision - that even if a due process claim wasn't raised, then appellate counsel had a reasonable basis for his actions - was unreasonable. With respect to the first contention, the court finds petitioner's newly raised argument is somewhat misplaced because the issue here is not whether the PCRA court incorrectly determined that appellate counsel fairly presented a federal due process claim to the PCRA court. Regardless, the court notes that the federal due process claim appears to have been fairly presented because it appears that the standard of review would have been harmless error, and the Pennsylvania standard is the same as the federal standard for analysis of such a claim. *See Johnson v. Mechling*, 541 F. Supp. 2d 651, 665-66 (M.D. Pa. 2008); *Groff v. Fulcomer*, No. 88-2364, 1988 U.S. Dist. LEXIS 5784, at *5 (E.D. Pa. June 14, 1988). Moreover, as explained above, the court finds that the PCRA court's decision that a due process claim was raised was objectively reasonable, and the issue is not whether it was correct. With respect to petitioner's second contention, as this court finds that it was objectively reasonable for the PCRA court to find that appellate counsel raised a due process claim, we need not consider petitioner's arguments regarding the PCRA court's alternative holding. Furthermore, this argument or new claim was not raised in petitioner's habeas petition.

*v. Pinholster*, No. 09-1088, 2011 U.S. LEXIS 2616, at *21 (April 4, 2011) (review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits). Thus, the petitioner has not shown that the PCRA court's decision was an unreasonable application of clearly established federal law.[10]

## Ground 5

In ground 5, petitioner claims that the prosecutor's remarks during closing argument amounted to a due process violation based on prosecutorial misconduct, and that trial counsel's failure to object amounted to ineffective assistance of counsel.

As an initial matter, the court notes that there appears to be some dispute over whether the due process claim based on prosecutorial misconduct was exhausted. Respondents argue that:

> ". . . [P]oint F in Stephens' brief on his direct appeal does not contain a single reference to the concept of due process and does not cite a single decision pertinent to the question of prosecutorial misconduct as constituting a denial of due process. The due process arguments which Stephens seeks to advance in his continuation sheet for Ground Five were not fairly presented in state court and therefore cannot be raised now as a basis for

---

[10] Accordingly, the court need not address respondents remaining arguments.

habeas relief."

(Doc. No. 9 at 18).

The court disagrees with respondents. Although respondents correctly point out that during petitioner's direct appeal to the Superior Court, petitioner did not explicitly state that he was bringing a federal claim, and petitioner did not rely on cases analyzing the prosecutorial misconduct claim under federal law, the respondents have failed to recognize that there are other ways a petitioner may fairly present his claim to the state courts. The Third Circuit has explained that

> [a] petitioner can "fairly present his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).

*Nara v. Frank*, 488 F.3d 187, 198 (3d Cir. 2007).

The court finds that although petitioner did not label his claim as federal or rely on federal precedent, the substance of his due process claim was presented to the Pennsylvania courts, and, therefore, this claim was exhausted. In *Johnson v. Mechling*, 541 F. Supp. 2d 651, 665 (M.D. Pa.

43

2008), the court was presented with a similar issue because petitioner Johnson had not labeled his sufficiency of evidence claim as a federal claim, and the petitioner had failed to rely on federal precedent. However, the court explained that the petitioner had exhausted his federal sufficiency of evidence claim because:

> Johnson, while relying only on state law, asserted his claim in terms so particular as to call to mind the specific due process right protected by the Fourteenth Amendment as described in Jackson. The Pennsylvania courts applied the same legal analysis to the same facts, and presumably came to the same conclusion, as they would have if Johnson had explicitly labeled his claim "federal." In this way, the Pennsylvania courts were given a fair opportunity to initially pass upon Johnson's claim. Neither federal-state comity nor judicial economy would be better served by requiring Johnson to return to the state courts simply because those courts' decisions do not include a "see also" citation to *Jackson v. Virginia*. . . .

> . . . because the Supreme Court has explicitly left unanswered the question presented here. . . Third Circuit precedent controls this case. The Third Circuit has held that a petitioner who presents a claim to the state courts which is decided under identical state and federal standards has given the state courts notice of the legal and factual substance of his claim, and that this satisfies the fair presentation rule. *See Nara*, 488 F.3d at 197-98; *McCandless*, 172 F.3d at 261; *Evans*, 959 F.2d at 1231.

*Id.* at 665-66. With respect to petitioner's prosecutorial misconduct claim, the test for due process claims based on prosecutorial misconduct has been

found to be substantively identical under both Pennsylvania and federal law.[11]

*See Walker v. Palahovich*, No. 05-0609, 2007 U.S. Dist. Lexis 13361, at *16 (E.D. Pa.   Feb. 27, 2007).  Because the state and federal due process inquiries for a claim of prosecutorial misconduct are substantively identical, the court finds that petitioner has fairly presented the federal prosecutorial misconduct claim in state court, and, therefore, the petitioner's due process claim based on prosecutorial misconduct is exhausted.  *See Walker*, 2007 U.S. Dist. LEXIS 13361, at *17.  Accordingly, the court will now to turn to the

---

[11] In *Corredor v. Coleman*, No. 09-1817, 2009 U.S. Dist. LEXIS 124172, at *25-26 n.7 (E.D. Pa. Nov. 30, 2009), the court explained that:

> Both [federal and state standards] focus on the fundamental fairness of the trial based on potential prejudice from the alleged prosecutorial misconduct. To establish a prosecutorial misconduct claim under Pennsylvania law, Corredor must demonstrate "the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict." However, both parties are given reasonable latitude in presenting their case to the jury, and the prosecutor's comments must be considered in the context of the entire trial and all evidence presented. Prosecutorial misconduct will not be found if the comments are based on "evidence or a fair inference therefrom," or are mere "oratorical flair."

(citations omitted).

merits of this claim.[12]

Petitioner asserts that the prosecutor engaged in prosecutorial misconduct, and that trial counsel was ineffective for failing to object. Specifically, petitioner contends that the prosecutor improperly referred to him as a liar during closing argument, and improperly asked the jury to use their common sense to find that the pizza sauce and wing sauce on his clothing was blood. With respect to the relevant testimony, the Superior Court noted that the prosecutor made the following statements during closing argument:

> So let's follow the evidence. What does the evidence say about the defendant? Liar. How does it do that?

> The cuts, the holes, the blood on the panty hose and why the clothes aren't' ripped. All of that supports her story. None that supports his. None.

> He's a liar. And you know why you know he's a liar? He told you so . . . .

> What else did he tell you that made him a liar? All the lies he told

---

[12] For the sake of thoroughness, the court notes that petitioner raised this prosecutorial misconduct claim on direct appeal to the Superior Court via ineffective assistance of counsel. However, the Superior Court addressed the prosecutorial misconduct claim on the merits. Therefore, to the extent the petitioner wishes to bring a separate claim based on the prosecutorial misconduct, he is permitted to do so. *See Armsted v. Palokovich*, No. 09-0629, 2009 U.S. Dist. LEXIS 128440, at *20-21 (E.D. Pa. Sept. 30, 2009).

to his girlfriend. . . .

So when he finally does come home with all these stains, she asks him about it. Does that have a ring of truth to it? Sure it does. Geez, where were you? What is that on you anyway? What does he say to her? He lies. Oh, I'm late because, you know, I don't have a car and I had to walk home from Scranton. And Gene asked him if that was a lie. Yes, it was.

Then he changes his story once again. Well, no, I didn't have to walk home from Scranton. I had to walk home from Heil's. I got a ride with a girl but I didn't want you mad. Well, geez, that's not true either, is it? Lie number two. Then she says well, what is that all over you anyway? Pizza sauce and wing sauce. It's not that either. He didn't eat anything that night. Use your common sense. Lie number three.

. . . .

And what's his testimony today? A lie. You can't believe the defendant. Don't believe the defendant. He makes absolutely no sense. There's no physical evidence to support his story. There's no witness to support his story, and the only honest thing he told you on the stand is that he's a liar. That's what the evidence tells you about the defendant in his case.

(Doc. No. 10 at 99-100) (citations omitted). Based on the foregoing, petitioner argues that the prosecutor engaged in prosecutorial misconduct and that trial counsel was ineffective for failing to object.

The Superior Court found that trial counsel was not ineffective for failing

to object because the prosecutor did not engage in prosecutorial misconduct.

The Superior Court observed that, at petitioner's trial, he admitted that he lied,

and that, the trial transcript revealed the following:

> [THE COMMONWEALTH:]     And do you remember telling her
> that you were at a bar and you had to walk home from Scranton;
> do you remember telling her that?
>
> [Appellant/Petitioner:]   Yes I do.
>
> Q:    And this is the girl that you're falling in love with and you're
> living with?
> A:    Yes.
> Q:    And you told her a lie?
> A:    Yes, I did.
> . . . .
> Q:    Okay. Fair to say then that you lied to her?
> A:    Fair to say, yes. I lied to her.
>
> Notes of testimony, 11/20/96 at 86-87. Later in the testimony,
> appellate admitted twice to lying to Voytko. (*Id.* at 88).

(Doc. No. 10-2 at 1). Upon reviewing the record, the Superior Court reasoned:

> It is well established that a prosecutor is not permitted to express
> a personal belief regarding the defendant's guilt or innocence or
> the veracity of the defendant or the credibility of his witnesses.
> *Commonwealth v. Johnson*, 527 Pa. 118, ___, 588 A.2d 1303,
> 1305 (1991). However, such comments do not constitute
> reversible error where the prosecutor's comments are elicited by
> the nature of the defense mounted and where the evidence

48

supports the inference that the defendant and/or a defense witness has lied. *Id.* at ___, 588 A.2d at 1305. When assessing a claim of error of this type, the appellate court must consider whether the prosecutor made a deliberate attempt to destroy the objectivity of the fact-finder or merely summarized the evidence presented at trial with the oratorical flair permitted during argument. *Commonwealth v. Chester*, 526 Pa. 578, ___, 587 A.2d 1367, 1377-1378 (1991), *cert. denied*, 502 U.S. 849 (1991).

We have reviewed the entire closing argument and see no indication that the prosecutor deliberately attempted to destroy the objectivity of the jury. Although the prosecutor repeatedly called the defendant a liar, the defendant admitted he lied regarding the facts that were placed into evidence. It is not reversible error for the prosecutor to comment that the defendant lied in cases where the comment was a fair inference from irrefutable evidence to which the prosecutor makes reference. *Commonwealth v. Graham*, 522 Pa. 115, ___, 560 A.2d 129, 130 (1989).

(Doc. No. 10-2 at 1-2). Furthermore, the Superior Court noted that the trial court then proceeded to give the jury its instructions, including a clear instruction that the arguments of counsel cannot be equated as evidence. *Id.* at 2. Because the petitioner admitted to lying and because the prosecutor's remarks were inferences based on the evidence, the Superior Court held that the prosecutor did not engage in prosecutorial misconduct, and, therefore, the ineffective assistance of counsel claim lacked merit.

Under federal law, prosecutorial misconduct amounts to a constitutional

violation only when the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). *See also United States v. Young*, 470 U.S. 1, 11-12 (1985) (Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, as *Lawn* teaches, the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. In other words, the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly.). Moreover,

> [t]here is no violation of due process when the prosecutor's statements were based on evidence. *See Darden v. Wainright*, 477 U.S. 168, 181-82 (1986); *see also Berger v. United States*, 295 U.S. 78, 88-89 (1935). Even a prosecutor's statement that warrants criticism does not rise to the high threshold required for unconstitutional misconduct, unless there is a strong likelihood the jury's decision was influenced by the improper argument. *Id.* at 182. In addition, strong evidence against the defendant, plus curative instruction, makes it less likely that a prosecutor's improper comments rendered the trial unfair. *See Marshall v. Hendricks*, 307 F.3d 36, 69 (3d Cir. 2002) (citing *Moore v. Morton*, 255 F.3d 95, 119 (3d Cir. 2001).

*Corredor*, 2009 U.S. Dist. LEXIS 124172, at *25.

As an initial matter, the court finds that the standard for prosecutorial

misconduct during closing argument employed by the Superior Court was not contrary to clearly established federal law. Specifically, the federal and state standard for prosecutorial misconduct have been observed to be substantively identical. *Id.* Thus, the court must determine if the Superior Court's decision was an unreasonable application of the federal standard for prosecutorial misconduct.

Based on the record that was before the Superior Court, it was reasonable for the Superior Court to find that the statements the prosecutor made during closing argument did not amount to prosecutorial misconduct. *See Cullen*, 2011 U.S. LEXIS 2616, at *21 (review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits). Specifically, the comments the prosecutor made were based on evidence or derived from proper inferences based on evidence that had been admitted during the course of the trial. As such, the Superior Court cited to *Graham*, which is consistent with federal law, and found the prosecutor's remarks amounted to fair inferences from irrefutable evidence to which the prosecutor made reference. Moreover, the trial court instructed the jury that the speeches given by counsel during closing arguments were not evidence. Because the prosecutor's remarks were grounded in the evidence, and

because the trial court gave the proper curative instruction, it does not appear

that the prosecutor's conduct in calling the petitioner a liar, or in asking the

jury to use their common sense about the stains on his clothing, so infected

the trial with unfairness as to make the conviction a denial of due process.

Thus, the court finds that the Superior Court's decision that no prosecutorial

misconduct existed involved a reasonable application of clearly established

federal law. Consequently, the court cannot find that petitioner's trial counsel

was ineffective for failing to object to the alleged prosecutorial misconduct.[13]

*See Tyson v. Hayman*, No. 09-5087, 2011 U.S. Dist. LEXIS 11181, at *16-17

(D.N.J. Feb. 3, 2011).


III.   **CONCLUSION**[14]

On the basis of the foregoing, **IT IS RECOMMENDED THAT** the

---

[13] The court notes that petitioner has made some arguments concerning witness vouching by the prosecution in his traverse. However, the court notes that any argument as to witness vouching was not raised on direct appeal or to the PCRA court. Accordingly, the court finds that even if this claim was raised in petitioner's habeas petition, the claim is unexhausted and procedurally defaulted for the reasons discussed in Part II A, *supra*, with respect to Ground 5.

[14] For the convenience of the reader, the court has attached copies of unpublished opinions cited within this document.

petitioner's petition for writ of habeas corpus, (Doc. No. 1), be **DENIED**.


s/ *Malachy E. Mannion*

**MALACHY E. MANNION**
**United States Magistrate Judge**

**DATE:** April 8, 2011

O:\shared\REPORTS\2008 Reports\08-1029-02.wpd